IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-CV-01053-WYD-BNB

LAURENCE PASKOWITZ,

    Plaintiff,

v.

JOEL W. LOONEY,
DEAN L. JACOBSON,
RICHARD I. BARR,
JOHN S. HOREJSI,
STEWART HOREJSI,
SUSAN L. CICIORA,
BOULDER INVESTMENT ADVISERS, L.L.C., and
STEWART WEST INDIES TRADING COMPANY, LTD, d/b/a STEWART INVESTMENT ADVISERS,

    Defendants,

And

BOULDER GROWTH AND INCOME FUND, INC.,

    Nominal Defendant.

---

**RESPONSE TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY
BY BOULDER INVESTMENT ADVISERS, L.L.C.
AND STEWART INVESTMENT ADVISERS**

---

Defendants Boulder Investment Advisers, L.L.C. ("BIA") and Stewart Investment Advisers ("SIA"), investment advisers to the Boulder Growth and Income Fund (the "Fund"), oppose Plaintiff's motion for expedited discovery.

Plaintiff seeks expedited discovery in order to prepare for a requested preliminary injunction hearing. Plaintiff brings three different legal claims. However, none of plaintiff's claims can justify a preliminary injunction hearing. With no need for the injunction hearing, there is no need for the expedited discovery.

First, Plaintiff purports to state claims under Section 20(a) of the Investment Company Act of 1940 ("ICA"), alleging that various directors of the Fund are liable for disseminating false and misleading proxy statements. Complaint ¶¶ 1, 58-69. However, plaintiff does not have a private right of action under Section 20 and therefore cannot bring these claims. *See Alexander v. Sandoval,* 532 U.S. 275, 286-89 (2001); *Davis v. Bailey,* No. 05-CV-00042-WYD-OES, 2005 U.S. Dist LEXIS 38204, at *8-*15 (D. Colo. Dec. 22, 2005) (attached as Ex. A). These claims must be dismissed and cannot support injunctive relief or expedited discovery.

Second, Plaintiff purports to bring state law claims for breach of fiduciary duty against BIA, SIA, and various individual defendants. Complaint ¶¶ 75-80. Plaintiff attempts to bring these claims as a shareholder class action, representing all persons who held shares in the Fund on April 30, 2007, and who continue to hold their shares. Complaint ¶¶ 33-34. However, these claims are pre-empted by section 101(b) of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). That section precludes class actions based on allegations of "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" and applies to plaintiff's claims here. *See Merrill Lynch, Pierce, Fenner & Smith v. Dabit,* 547 U.S. 71, 126 S. Ct. 1503, 1511-15 (2006).

Finally, Plaintiff's remaining claim is brought under Section 36(b) of the ICA against BIA and SIA for allegedly excessive advisory fees. Complaint ¶¶ 3, 70-74. Plaintiff claims that

if the Fund's proposed Rights Offering is conducted as planned, and if enough shareholders choose to purchase enough additional shares in the Fund, then the Fund's assets may grow significantly and BIA and SIA's long-established 1.25% advisory fee may result in their receiving "excessive" compensation. Complaint ¶¶ 14, 51.

This claim cannot justify enjoining the Rights Offering. The claim is not ripe. As a matter of logic, the Court cannot adjudicate a claim about "excessive" post-Offering advisory fees before the closing of the Offering. The Offering presents Fund shareholders with an opportunity to purchase additional shares in the Fund, but no one knows how or even whether the shareholders will respond to this opportunity. Until the Rights Offering closes and the amount of additional shares that shareholders will have purchased is known, there is no way of knowing how large the post-Offering advisory fee will be or what services the advisers will need to provide to the Fund to earn that fee. There is thus no way of judging prior to the closing of the Rights Offering if the fee that will result from that Offering is "excessive."

Moreover, there is no need to enjoin the Offering in order to protect shareholders from potentially excessive fees. Any claim of excessive fees can be pursued after the Offering closes and the new fees are determined. Any remedies that Plaintiff would be entitled to under Section 36(b) will be available to him then, not now. There is no reason to delay the closing of the Offering over a claim where Plaintiff will have an adequate remedy available after closing

Since none of plaintiff's three claims justify an injunction hearing – and all should be dismissed – there is no need for expedited discovery.

**I.  PLAINTIFF CANNOT BRING HIS SECTION 20 CLAIMS BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION TO PURSUE THESE CLAIMS.**

In April 2006 the Fund distributed a proxy statement to its shareholders asking for shareholder approval of a new policy for distributing dividends. In March 2007 the Fund distributed another proxy statement asking for shareholder approval of a change in the Fund's industry concentration policy. The shareholders approved both proposals. Complaint ¶¶ 35-38, 42-44.

Plaintiff claims that both of these proxy statements were false and misleading. Plaintiff says that shareholders should have been told that both of these requested changes in Fund policies were part of a scheme that was intended to lead up to the pending Rights Offering. Plaintiff claims that "the *real* reason" for the change in dividend policy was to artificially inflate the market price of the Fund's stock to prepare the way for the Rights Offering. Complaint ¶¶ 39-41. Likewise, he claims that the change in the investment restriction "was an integral part of the Rights Offering plan" and that approval of that change "would trigger the Rights Offering." Complaint ¶¶ 45-47.

Plaintiff says in his Complaint that he has a private right of action under Section 20(a) of the ICA to complain of these allegedly false proxy statements. He cites *J.I. Case Co. v. Borak,* 377 U.S. 426 (1964), a case that concerns a different statute, the Securities Exchange Act of 1934. Complaint ¶ 1 n.1. But Plaintiff is wrong about the law. As this Court's analysis in *Davis v. Bailey* makes clear, there is no private right of action under Section 20.

The controlling case is *Alexander v. Sandoval,* 532 U.S. 275 (2001). There the Supreme Court set forth the governing principles for determining if a statute creates a private right of action. 532 U.S. at 286-89. The Supreme Court stated that it was abandoning the "*ancien*

4

*regime*" under which courts would often recognize a private right of action when they determined that doing so would further the goals of the legislation at issue. Indeed, the Supreme Court said that the very case that plaintiff relies on, *Borak*, is based on that former understanding that "we abandoned . . . and have not returned to [ ] since." The Court noted that "[n]ot even when interpreting the same Securities Exchange Act of 1934 that was at issue in *Borak* have we applied *Borak's* method for discerning and defining causes of action." *Id.* at 287; *see also Davis*, 2005 U.S. Dist. LEXIS 38204, at *10-*11.

Since *Sandoval,* a statute creates a private right of action only when the statute manifests an intent to create both a private right and a private remedy. The sole focus of the analysis is on determining Congressional intent. *See Boswell v. Skywest Airlines, Inc.,* 361 F.3d 1263, 1266-67 (10th Cir. 2004); *Davis*, 2005 U.S. Dist. LEXIS 38204, at *9-*11. That intent is determined by examining the statute for language that confers a right of action on a particular class of persons and by considering the relation between the provision at issue and the overall statutory scheme. If that investigation resolves the question, there is no need to look further for other indicators of congressional intent. *See Boswell,* 361 F.3d at 1266-67; S*rebnik v. Dean,* No. 05-CV-01806-WYD-MJW, 2006 U.S. Dist. LEXIS 73836, at *8-*9 (D. Colo. Sept. 26, 2006) (Ex. B); *Univ. of Colo. Hosp. Auth. v. Denver Publ'g Co.,* 340 F. Supp. 2d 1142, 1143-44 (D. Colo. 2004).

Section 20(a), under which Plaintiff purports to act, reads as follows:

> It shall be unlawful for any person, by use of the mails or any means or instrumentality of interstate commerce or otherwise, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security of which a registered investment company is the issuer in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 80a-19(a).  Nothing in this statute indicates that Congress intended to create a private right of action.

First, there is no "rights-creating" language in this section that would show that Congress intended to empower private individuals to bring a lawsuit.  *See Sandoval,* 532 U.S. at 288.  The section merely states that it is unlawful for persons to distribute proxy statements that violate the rules and regulations of the Securities and Exchange Commission.  The natural implication is that Congress is looking to the SEC to enforce its own rules and regulations, not empowering private individuals to do so.  "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'"  *Sandoval,* 532 U.S. at 289 (quoting *California v. Sierra Club,* 451 U.S. 287, 294 (1981)).

Second, the overall structure of the ICA confirms that Section 20 was not intended to create a private right of action.  The ICA sets forth its own enforcement mechanism in Section 42, 15 U.S.C. § 80a-41.  That section authorizes the SEC to enforce all the provisions of the ICA through investigations and civil suits for injunctions and penalties.  "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Sandoval,* 532 U.S. at 290; s*ee also In re Eaton Vance Mut. Funds Fee Litig.,* 380 F. Supp. 2d 222, 232 (S.D.N.Y. 2005) (no private right of action under the ICA in light of section 42).

Moreover, when Congress wanted to provide additional means of enforcing the provisions of the ICA, it knew how to do so.  There is one section of the ICA – section 36(b), 15 U.S.C. § 80a-35(b) – that expressly grants shareholders of mutual funds the right to sue on behalf of the fund to enforce the fund's rights under that section.  The fact that Congress expressly

made this individual right available to enforce one section of the ICA and did not do so as to any other section further indicates that Congress intended no such right under Section 20. *See In re Eaton Vance,* 380 F. Supp. 2d. at 232 ("Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional.") (quoting *Olmsted v. Pruco Life Ins. Co.,* 283 F.3d 429, 433 (2d Cir. 2002)).

Since *Sandoval,* every court that has had to determine whether an implied private right of action exists under various sections of the ICA has concluded that there is no private right. *See, e.g., Olmsted* 283 F.3d at 432-36 (no private right of action under sections 26(f) or 27(i)); *In re Mutual Funds Investment Litig.,* 384 F. Supp. 2d 845, 868-70 (D. Md. 2005) (collecting cases); *In re Eaton Vance,* 380 F.Supp. 2d at 230-33 (no private right of action under sections 34(b), 36(a), and 48(a)); *White v. Heartland High-Yield Mun. Bond Fund,* 237 F.Supp. 2d 982, 986-87 (E.D. Wis. 2002) (no private right of action under sections 22 and 34(b)); *meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.,* 260 F.Supp. 2d 616, 621-25 (S.D.N.Y. 2003) (no private right of action under section 12(d)(1)).[1]

---

[1] Pre-*Sandoval* cases came out both ways on the existence of a private right of action under Section 20. *Compare Krinsk v. Fund Asset Mgmt, Inc.,* 654 F.Supp. 1227, 1232-33 (S.D.N.Y. 1987) *with Tarlov v. Paine Webber Cashfund, Inc.,* 559 F.Supp. 429, 439 (D.Conn. 1983). Those cases are of little or no significance today, because they did not rely on the analysis mandated by *Sandoval*. *See Southwest Air Ambul., Inc. v. City of Los Cruces,* 268 F.3d 1162, 1170-71 (10th Cir. 2001) (prior analysis has been replaced by focus on "whether Congress, expressly or by implication, intended to create a private cause of action") (quoting *Sonnenfeld v. City & County of Denver,* 100 F.3d 744, 747 (10th Cir. 1996)); *Bonano v. E. Caribbean Airline Corp.,* 365 F.3d 81, 86 n.4(1st Cir. 2004) ("Because the Supreme Court's decision in Sandoval changed the legal landscape, we regard that pre-Sandoval decision as lacking continued vitality."); *Love v. Delta Airlines,* 310 F.3d 1347, 1359 (11th Cir. 2002) (declining to follow pre-*Sandoval* decisions).

The decision here on Section 20 should be the same. There is no rights-creating language in Section 20, there is an alternative method of enforcement under the ICA, and there is an express grant of a private right of action for another section but not for Section 20. This all compels the conclusion that Plaintiff has no claim against the defendant directors under Section 20(a). Plaintiff's requested injunction hearing and expedited discovery therefore are not justified by these claims.

## II. PLAINTIFF'S CLASS ACTION CLAIMS ARE PRE-EMPTED BY THE SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998.

Plaintiff brings state law fiduciary duty claims based on the same allegations that underlie his other claims. Complaint ¶¶ 75-80. He alleges that various defendants breached their duties by disseminating misleading proxy statements in 2006 and 2007 and by pursuing the pending Rights Offering. He claims that the proxy statements were "part of a scheme" that ultimately culminated in the Rights Offering. According to plaintiff, the 2006 proxy statement "was clearly tied to the Rights Plan" and the 2007 proxy statement "was an integral part of the Rights Offering Plan." Complaint ¶¶ 1, 41, 47. He alleges that under the Rights Offering, shares in the Fund "will be sold at an extreme discount," that existing shareholders "will be coerced into participating," and that the market value of the shareholders' shares "will materially decrease." *Id.* ¶ 1. According to Plaintiff, defendants' actions were all connected as part of a scheme to "inflate the Fund's market price and then disseminate an unfair and coercive Rights Offering." *Id.* ¶ 55.

Plaintiff purports to bring these claims as a shareholder class action, representing all persons who held shares in the Fund on April 30, 2007 and who continue to hold shares. *Id.* ¶¶ 33-34.

However, Plaintiff cannot bring these claims, because they are pre-empted by Section 101(b) of the Securities Litigation Uniform Standards Act of 1998. That section provides that:

> No covered class action based upon statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging --
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

Plaintiff's claims fall squarely within the scope of the statute. A "covered class action" is one seeking damages for more than 50 people, and plaintiff claims to be representing a class of "thousands." A "covered security" is one traded nationally and listed on a regulated national exchange, and the Fund's shares are traded nationally and listed on the New York Stock Exchange. Complaint ¶¶ 22, 34(a). Plaintiff brings state law claims and alleges misrepresentations and omissions of fact in connection with the Rights Offering that he is attempting to challenge. Plaintiff's class action claims are therefore pre-empted. *See Merrill Lynch, Pierce, Fenner & Smith v. Dabit,* 547 U.S. 71, 126 S. Ct. 1503, 1511-16 (2006).

Plaintiff apparently hopes to escape pre-emption by clever pleading. He may argue that because he seeks to represent shareholders who owned Fund shares on April 30, 2007 and continue to own them, he is representing a class of "holders," not a class of buyers or sellers. He may claim that the alleged fiduciary breaches that he complains of are therefore not "in connection with the purchase or sale" of a covered security.

This argument is foreclosed by *Dabit.* The *Dabit* plaintiff's initial class action claims had been dismissed pursuant to SLUSA because he sought to represent purchasers of securities. He

9

then came back with a new class definition, seeking to represent those who "owned and continued to own" the securities at issue. *Dabit,* 126 S. Ct. at 1507-08. The Supreme Court held that redefining the class to be one of "holders" rather than purchasers or sellers did not avoid the preclusive effect of the statute. The Court found that the class members themselves did not have to be buyers or sellers of securities. Rather, "it is enough that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by someone else." *Id.* at 1513 (citation omitted).

> The Court then held:
>
> For purposes of SLUSA pre-emption, that distinction [between holders instead of purchasers or sellers] is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities. The misconduct of which respondent complains here – fraudulent manipulation of stock prices – unquestionably qualifies as fraud 'in connection with the purchase or sale' of securities . . . ."

*Id.* at 1515 (citations omitted).

Under *Dabit,* plaintiff's attempt to bring state law class action claims in connection with the Rights Offering are clearly precluded, and his class action claims must be dismissed. *See In re Salomon Smith Barney Mutual Fund Fees Litig.,* 441 F.Supp. 2d 579, 603-04 (S.D.N.Y. 2006) (dismissing subclass of security "holders"; "SLUSA's operative language must be read broadly to sweep in not only purchasers and sellers of securities but also holders of securities"); *Felton v. Morgan Stanley Dean Witter & Co.,* 429 F.Supp. 2d 684, 691 (S.D.N.Y. 21006) ("there is no 'holder class' exception under the 'in connection with the purchase or sale' prong of the SLUSA analysis"); *In re Edward Jones Holders Litigation,* 453 F.Supp. 2d 1210, 1214-15 (C.D.Cal. 2006) (pre-empting holder class); *Fisher v. Kanas,* No. 07-CV-0302 (ADS)(ETB), 2007 U.S. Dist. LEXIS 33675, at *15-*19 (E.D.N.Y. May 7, 2007) (Ex. C) (same); *Gordon Partners v.*

*Blumenthal,* No. 02 Civ. 7377 (LAK)(HJP), 2007 U.S. Dist. LEXIS 9110, at *59-60 (S.D.N.Y. Feb. 9, 2007) (Ex. D) (same).

Plaintiff's class action claims, like his Section 20 claims, thus provide no possible grounds for ordering injunctive relief or expedited discovery.

### III.   PLAINTIFF'S SECTION 36(B) CLAIM IS NOT RIPE AND CANNOT JUSTIFY ENJOINING THE RIGHTS OFFERING.

Plaintiff's remaining claim is a claim for allegedly excessive advisory fees under Section 36(b) of the Investment Company Act. Section 36(b) provides that investment advisers to a mutual fund have a fiduciary duty to the fund with respect to their payment for services, and authorizes shareholders in the fund to sue on behalf of the fund with respect to such payment. *See Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 534-35 (1984).

The elements of an excessive fee claim under Section 36(b) are well-established. The test is whether the fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Gartenberg v. Merrill Lynch Asset Mgmt, Inc.,* 694 F.2d 923, 928 (2d Cir. 1982) (citations omitted). In considering whether a fee is excessive, most courts consider six factors identified in *Gartenberg*: (1) the nature and quality of the services rendered, (2) the profitability of the funds to the adviser/manager, (3) economies of scale, (4) comparative fee structures, (5) fallout benefits (indirect profits to the adviser/manager), and (6) the care and conscientiousness of the directors. *See Sins v. Janus Capital Mgmt.,* Nos. 04-CV-01647-WDM-MEH and 04-CV-02395-MSK-CBS, 2006 U.S. Dist. LEXIS 90673, at *6-*10 (D. Colo. Dec. 15, 2006) (Ex. E) (applying the *Gartenberg* factors).

Plaintiff's claim is that if the Fund's proposed Rights Offering is conducted as planned, and if enough shareholders participate, and if they choose to purchase enough additional shares in the Fund, then the Fund's assets may grow significantly and BIA and SIA's long-established 1.25% advisory fee might result in their receiving "excessive" compensation. Complaint ¶¶ 14, 51. This claim is not ripe for adjudication and cannot justify an injunction hearing on the Rights Offering.

In order for a claim to be justiciable, there must be a ripe controversy. Ripeness is required so that a court does not waste its resources in premature adjudication. "[T]he doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in 'clean-cut and concrete form.'" *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir. 1995) (citations omitted). The test for ripeness typically looks at two factors: the fitness of the issue for judicial resolution and the hardship to the parties of delaying judicial consideration. *Id.* Plaintiff's claim fails on both factors.

The problem with Plaintiff's claim is that until the Rights Offering closes, the Court will have no possible way to adjudicate a claim of excessive fees. At this point, prior to the closing of the Offering, the Court cannot know what the post-Offering fee will be and the Court cannot know what services the advisers will provide post-Offering to earn that fee. There is no justiciable case or controversy, because all of the factual underpinnings of the claim are contingent on what happens during and after the Rights Offering. "A claim is unripe when critical elements are contingent or unknown." *Marusic Liquors, Inc. v. Daley,* 55 F.3d 258, 260 (7th Cir. 1995); *see also Gonzalez,* 64 F.3d at 1499 (issue for justiciability is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may

not occur at all") (citation omitted); *In re Drexel Burnham Lambert Group Inc.,* 995 F.2d 1138, 1146 (2d Cir. 1993) ( a claim is unripe if it depends on "future events so contingent in nature that there is no certainty that they will ever occur"); *Richardson v. U.S. News & World Report,* 623 F. Supp. 350, 352-53 (D.D.C. 1985) ("it is not within the purview of federal courts to decide controversies based on contingencies that have yet to ripen into actualities").

The Court cannot know the size of the post-Offering advisory fee at this time because no one can know how many shareholders will decide to purchase shares in the offering and how many shares they will choose to purchase. Plaintiff assumes that the maximum number of shares will be purchased, which would approximately triple the assets of the Fund and thus approximately triple the fee earned by the advisers. Plaintiff says that if the fee triples, that would be "excessive." But there is no particular reason to think that the size of the Fund will triple as a result of the Offering or that the current rate of 1.25%, which has been approved by shareholders, is inappropriate for the assets raised in the Offering. Perhaps the fee earned will only double. Perhaps it will increase by only 25%. It all depends on what the shareholders decide to do, and it is all speculation at this point.

Nor can anyone know how the services provided by the advisers may change after the Offering. If there are significant cash proceeds to the Fund as a result of the Offering, the advisers will need to take appropriate steps to prudently invest the proceeds. If the size of the Fund increases significantly, then fixed costs associated with the Fund will be spread across more shares and should decline on a per-share basis. The nature and quality of the services that the advisers provide after the Offering, as well as any off-setting advantages of the Offering

(such as reduced fixed costs), would all need to be considered in order for the Court to determine if the post-Offering fees are excessive or not.

In short, by bringing a claim that the advisers may reap excessive fees after the closing of the Rights Offering, plaintiff is asking the Court to speculate about matters that cannot be known. Not one of the facts that would need to be considered under the *Gartenberg* standard can be known at this time. The Court should decline to entertain plaintiff's claim on ripeness grounds. *See Keyes v. School Dist. No. 1, Denver, Colo.,* 119 F.3d 1437, 1443-44 (10th Cir. 1997) (dismissing appeal for lack of ripeness).[2]

Moreover, Plaintiffs claim of excessive fees provides no reason to delay the closing of the Rights Offering. To the extent that the Plaintiff is correct and the size of the Fund increases dramatically as a result of the Rights Offering, Plaintiff can pursue his remedies at that point. The new fees will be known and Plaintiff can decide if he thinks that those fees are excessive under the *Gartenberg* standard. Plaintiff can then attempt to bring a Section 36(b) claim if he feels one is appropriate. Moreover, in the event that this Court ever found that the fees were excessive, the Court could grant appropriate monetary or injunctive relief. Since plaintiff can

---

[2] Because the facts relevant to Plaintiff's Section 36(b) claim are all contingent at this time, Plaintiff also cannot meet the basic pleading requirements for his claim. To plead a claim under Section 36(b), a plaintiff cannot rely on mere conclusory allegations that a fee is excessive. Rather, a plaintiff must allege with specificity why the fee is excessive in relation to the services provided by the advisers. *See, e.g., Migdal v. Rowe Price-Fleming Int'l. Inc.,* 248 F.3d 321, 326-28 (4th Cir. 2001) (affirming dismissal of a Section 36(b) claim where plaintiff failed to allege sufficient facts about the relationship between fees received and services rendered); *Yameen v. Eaton Vance Distributors, Inc.,* 394 F.Supp. 2d 350, 355-56 (D.Mass. 2005) (allegations that fees became excessive when fund closed to new investors failed to state claim under Section 36(b)). Because the fee, the services, and everything else relevant to Plaintiff's 36(b) claim here are still unknown, Plaintiff cannot properly plead such a claim.

pursue and be granted any necessary relief after the Rights Offering closes, there is no reason to delay that closing.

## CONCLUSION

Plaintiff cannot bring his Section 20 claims because there is no private right of action under Section 20.   Plaintiff cannot bring his state law class action claims because they are preempted by the Securities Litigation Uniform Standards Act.   Plaintiff's Section 36(b) claim is not ripe and cannot be addressed until after the closing of the Rights Offering.  It thus provides no justification for an injunction hearing.

Since there is no need for an injunction hearing on any of Plaintiff's claims, there is no need for expedited discovery.  Plaintiff's motion for expedited discovery should be denied.[3]

---

[3] The Fund is filing a separate response to Plaintiff's motion for expedited discovery.  In addition to the arguments made here, BIA and SIA join in the arguments made by the Fund.

DATED this 11th day of June, 2007.

                                        Respectfully submitted,

                                        s/Lester C. Houtz_____
                                        Lester C. Houtz
                                        BARTLIT BECK HERMAN PALENCHAR &
                                            SCOTT LLP
                                        1899 Wynkoop Street, 8th Floor
                                        Denver, CO 80202-1086
                                        Telephone:  (303) 592-3100
                                        Facsimile:   (303) 592-3140
                                        Email:       lester.houtz@bartlit-beck.com

                                        ***Attorneys for Defendants Boulder Investment***
                                        ***Advisers, L.L.C., and Stewart West Indies Trading***
                                        ***Company, Ltd, d/b/a Stewart Investment Advisers***

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2007, I electronically filed the foregoing **RESPONSE TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY BY BOULDER INVESTMENT ADVISERS, L.L.C. AND STEWART INVESTMENT ADVISERS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

**Attorneys for Plaintiff:**
Gerald L. Bader, Jr., gbader@bader-associates.com

**Attorneys for Defendant Boulder Growth and Income Fund, Inc.:**
Christian Heath Hendrickson, chendrickson@shermanhoward.com
Lawrence W. Treece, ltreece@sah.com
William F. Sullivan, williamsullivan@paulhastings.com
Joshua G. Hamilton, joshuahamilton@paulhastings.com

I further certify that on this 11th day of June, 2007, a true and correct copy of the foregoing **RESPONSE TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY BY BOULDER INVESTMENT ADVISERS, L.L.C. AND STEWART INVESTMENT ADVISERS** was placed in the United States Mail, addressed to:

Roy L. Jacobs
Roy Jacobs & Associates
60 East 42nd Street, 46th Floor
New York, NY  10165
Telephone:     (212) 867-1156
Facsimile:     (212) 504-8343

**Attorneys for Plaintiff**

  s/Renée L. Grimmett
Renée L. Grimmett, Legal Assistant
BARTLIT BECK HERMAN PALENCHAR &
  SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, CO 80202-1086
Telephone:  (303) 592-3100
Facsimile:  (303) 592-3140
Email:     renee.grimmett@bartlit-beck.com