IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-CV-01053 WYD-BNB

---

LAURENCE D. PASKOWITZ,

      Plaintiff,

v.

JOEL W. LOONEY,
DEAN L. JACOBSON,
RICHARD I. BARR,
JOHN S. HOREJSI,
SUSAN L. CICIORA,
STEWART HOREJSI,
BOULDER INVESTMENT ADVISERS, L.L.C, and
STEWART WEST INDIES TRADING COMPANY LTD, d/b/a STEWART INVESTMENT
ADVISERS,

      Defendants

   --and--

BOULDER GROWTH AND INCOME FUND, INC.,

      Nominal Defendant.

---

**NOMINAL DEFENDANT BOULDER GROWTH & INCOME FUND, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
UNDER F.R.C.P. 12(b)(6)**

---

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT.................................................................................... 1

II.    FACTS............................................................................................................................ 3

    A.    Background of the Fund................................................................................... 3

        1.    The 2006 Proxy Statement.................................................................. 4

        2.    2007 Proxy Statement ........................................................................ 5

        3.    The Rights Offering............................................................................ 5

    B.    Plaintiff's Allegations .................................................................................... 7

III.   STANDARD FOR MOTION TO DISMISS.................................................................. 9

IV.   PLAINTIFF'S CLAIMS UNDER THE ICA AND STATE LAW CLAIMS MUST
      BE DISMISSED BECAUSE THEY ARE DERIVATIVE IN NATURE. ...................... 10

        1.    Because Plaintiff's 20(a) and State Law Claims Seek to Redress an
             Injury to the Entity, They Are Derivative.......................................... 11

        2.    Plaintiff's Claims Under Section 20(a) and State Law Must Be
             Dismissed Because He Has Not Alleged a Demand on the Board............... 13

           a.    Maryland law requires that Plaintiff make a demand on the
                Board or allege demand futility............................................. 13

           b.    Demand is not excused under Maryland law...................................... 14

V.    CONCLUSION............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Andropolis v. Snyder,*
  Nos. 05-cv-01563-EWN-BNB, 05-cv-01903, 05-cv-1707, 2006 WL 2226189 (D.
  Colo. Aug. 3, 2006.) ................................................................................................................ 14

*Aulson v. Blanchard,*
  83 F.3d 1 (1st Cir. 1996) ........................................................................................................... 9

*Brooks v. Land Drilling Co.,*
  564 F. Supp. 1518 (D. Colo. 1983) ......................................................................................... 14

*David v. City and County of Denver,*
  101 F.3d 1344 (10th Cir. 1996), *cert. denied,* 522 U.S. 858 (1997) ................................................. 9

*Gagan v. Norton,*
  35 F.3d 1473 (10th Cir. 1994) ................................................................................................... 9

*GFF Corp. v. Associated Wholesale Grocers, Inc.,*
  130 F.3d 1381 (10th Cir. 1997) ............................................................................................... 10

*In re Dreyfus Mut. Fund Fee Litig.,*
  428 F. Supp. 2d 357 (W.D. Pa. 2006) ..................................................................................... 10

*In re e.spire Commc'ns, Inc. Sec. Litig.,*
  127 F. Supp. 2d 734 (D.Md. 2001) ......................................................................................... 10

*In re Eaton Vance Mut. Funds Fee Litig.,*
  380 F. Supp. 2d 222 (S.D.N.Y 2005) ...................................................................................... 10

*In re NAHC, Inc. Sec. Litig.,*
  306 F.3d 1314 (3d Cir. 2002) .................................................................................................. 10

*In re Silicon Graphics Inc. Sec. Litig.,*
  183 F.3d 970 (9th Cir. 1999) ................................................................................................... 10

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.,*
  No. Civ. RDB 05-841, 2005 WL 2989343 (D. Md. Nov. 3, 2005) ................................... 12, 13

*Kamen v. Kemper Fin. Servs., Inc.,*
  500 U.S. 90 (1991) ............................................................................................................... 3, 11

*Kauffman v. Dreyfus Fund, Inc.,*
  434 F.2d 727 (3d Cir. 1970) .................................................................................................... 10

*Krantz v. Fidelity Mgmt. & Research Co.,*
  98 F. Supp. 2d 150 (D. Mass 2000) ......................................................................................... 15

*Krantz. v. Prudential Invs. Fund Mgmt. LLC,*
  77 F.Supp. 2d 559 (D.N.J 1999) .............................................................................................. 15

*Lovelace v. Software Spectrum, Inc.,*
  78 F.3d 1015 (5th Cir. 1996) ................................................................................................... 10

*Meade v. Grubbs,*
  841 F.2d 1512 (10th Cir. 1988) ............................................................................................... 10

# TABLE OF AUTHORITIES
## (continued)

Page

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
  248 F.3d 321 (4th Cir. 2001) .............................................................................. 9

*Paskowitz v. Wohlstadter*,
  151 Md. App. 1, 822 A. 2d 1272 (Md. Ct. Spec. App. 2003) ........................2, 12, 13

*Rocky Mountain Christian Church v. Bd. of County Com'rs of Boulder County, Colo.*,
  481 F. Supp. 2d 1213 (D. Colo. 2007) ............................................................. 9

*Ruiz v. McDonnell*,
  299 F.3d 1173 (10th Cir. 2002), *cert. denied*, 538 U.S. 999 (2003) .............................. 9

*Sample v. Morgan*,
  914 A. 2d 647 (Del Ch. 2007) ........................................................................ 11

*Tafflin v. Levitt*,
  92 Md. App. 375, 608 A. 2d. 817 (Md. Ct. Spec. App. 1992) ............................... 10

*Waller v. Waller*,
  187 Md. 185, 49 A. 2d 449 (Md. 1946) ....................................................11, 12, 13

*Werbowsky v. Collomb*,
  362 Md. 581, 766 A. 2d 123 (Md. 2001) ......................................... 3, 11, 13, 14, 15

## STATUTES

15 U.S.C. § 20.......................................................................................................... 1

15 U.S.C. § 20(a) ..........................................................................................1, 11, 13, 15

15 U.S.C. § 23 ........................................................................................................ 6

15 U.S.C. § 36(b) .................................................................................................... 1

15 U.S.C. § 80a-2(a)(19) ......................................................................................... 14

15 U.S.C. § 80a-2(a)(3) ........................................................................................... 14

15 U.S.C. § 80a-2(a)(9) ........................................................................................... 14

Md. Corps. & Ass'ns Code § 2-405.3 ....................................................................... 14

Md. Corps. & Ass'ns Code Ann. § 2-405(a) ............................................................. 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1

Fed. R. Civ. P. 23.1 ........................................................................................... 2, 3, 7

## TREATISES

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed. 1990) ....................... 9

Nominal Defendant Boulder Growth & Income Fund, Inc. (the "Fund") hereby moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss claims 1 and 2 of Plaintiff's Complaint, alleging violations of Section 20(a) of the Investment Company Act of 1940 ("ICA"), and claims 4 and 5 alleging state law claims for breach of fiduciary duty and permanent injunction, respectively.[1]

## I.   PRELIMINARY STATEMENT

Plaintiff has brought his purported class action complaint on behalf of the Fund's shareholders against a variety of Defendants related to and including the Fund.  The Fund is a registered closed-end, non-diversified management investment company, which means its activities are governed by the Investment Company Act of 1940 ("ICA"), and closely regulated by the Securities and Exchange Commission ("SEC").  Other Defendants in this case have concurrently filed motions to dismiss which demonstrate that each claim brought by Plaintiff is legally barred, and those motions are completely dispositive of this case.  This Motion, brought on behalf of the Fund, provides additional grounds to dismiss Plaintiff's class action claims for violations of Section 20(a) of the ICA, state law claims for breach of fiduciary duty and a claim for preliminary injunction (Claims 1, 2, 4 and 5).  Each of these claims cannot be brought directly by a shareholder plaintiff, but instead must be brought derivatively on behalf of the Fund.[2]

---

[1] Defendant Joel W. Looney ("Looney") has filed a motion to dismiss the claims under Section 20(a) of the ICA because, *inter alia*, it provides no private right of action, and also to dismiss the state law claim for breach of fiduciary duty because it is preempted by Securities Litigation Uniform Standards Act ("SLUSA").  Boulder Investment Advisers, Inc. and Stewart Investment Advisers has filed a motion to dismiss Claim 3 brought under 36(b) of the ICA for excessive fees on the grounds that, *inter alia*, no fees have been received, so the claim is not ripe.  The Fund has joined these motions.

[2] Plaintiff's claim for a Permanent Injunction is not a "claim," but rather a remedy.  Without a cognizable legal claim, there can be no such remedy.

The distinction between a direct and derivative claim has significant legal consequences.  A corporation is a separate and distinct entity from its shareholders.  The management and operation of the corporation is conducted by the board of directors.  Except to the extent that a transaction or decision must, by law or by virtue of the corporate charter, be approved by the shareholders, the directors exercise the powers of the corporation.  Consequently, a shareholder cannot assert a claim on his or her own behalf where the alleged injury is suffered by the corporation, and to allow such shareholder interference would disrupt proper corporate management of companies.  Yet that is precisely what Plaintiff is attempting to do in his Complaint with respect to Claims 1, 2, 4 and 5, each of which attempt to remedy purported injuries to the Fund.  Such claims are derivative in nature, and may only be brought on behalf of the Fund pursuant to the prerequisites of Rule 23.1 of the Federal Rules of Civil Procedure ("Rule 23.1").  Because Plaintiff failed to comply with these prerequisites, Plaintiff lacks standing to bring the purported claims.  Accordingly, the claims should be dismissed.

Plaintiff has tried to usurp the rights of corporations by bringing direct claims before, and has failed.  *Paskowitz v. Wohlstadter*, 151 Md. App. 1, 10, 822 A. 2d 1272, 1277 (Md. Ct. Spec. App. 2003) (granting motion to dismiss on grounds that directors' alleged violation of their fiduciary duty of disclosure, by making materially misleading partial disclosures about corporation's joint venture in proxy statements, must be brought derivatively) (A copy of which is attached hereto for the Court's convenience).  Plaintiff is now seeking to recast these failed legal theories in a new forum by using invective (and erroneous) allegations in this case with the aim that the Court will come to a different conclusion.  Stripped of its camouflage, Plaintiff's Complaint is nothing more than Plaintiff's disagreement with the corporate governance decisions of the board, which Plaintiff believes will

reduce the value of the Fund.  While the allegations are simply revisionist history by an opportunistic Plaintiff, the claims are *per se* derivative.

As a derivative claim, Plaintiff was obligated to comply with the prerequisites of Rule 23.1 and Maryland law, which require, among other things, that Plaintiff (i) verify the complaint, (ii) allege continuous stock ownership, and (iii) make a "demand" on the board of directors of the Fund.   *See Werbowsky v. Collomb*, 362 Md. 581, 766 A. 2d 123 (Md. 2001).[3]  Plaintiff is not entitled to ignore the requirements of the law.  Accordingly, the Court should dismiss count numbers 1, 2, 4 and 5 from the Complaint for Plaintiff's failure to comply with Rule 23.1 and his resulting lack of standing.

## II.   <u>FACTS</u>

### A.   <u>Background of the Fund</u>

The Fund's investment objective is total return, whereby the Fund seeks to produce both income and long-term capital appreciation by investing in a portfolio of equity and debt securities.  (Draft Registration Statement at p. 11, Request for Judicial Notice ("RJN") filed and served concurrently herewith, Ex. C.)  A "closed-end" fund is one that has a fixed number of outstanding shares.  Consequently, investors who wish to acquire shares in the Fund ordinarily must purchase them from other shareholders rather than, as in open-ended funds, directly from the Fund itself.  (Complaint ("Compl.") at p. 5, fn. 2)[4]

---

[3] The law is settled that state law controls whether an ICA claim is derivative in nature, and whether a plaintiff has satisfied the demand requirement for derivative actions. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991).  Since the Fund is incorporated in Maryland, Maryland law determines whether Plaintiff's claims are derivative or direct in nature. *Id.*

[4] The Fund's investment advisers are Boulder Investment Advisers, LLC and Stewart Investment Advisers (collectively, the "Advisers").  The Fund's Board of Directors includes independent directors Looney, Dean L. Jacobson ("Jacobson") and Richard I. Barr ("Barr") (collectively, "Independent Directors"), and its inside directors John S. Horejsi and Susan L. Ciciora ("Inside Directors").  The Fund's portfolio manager is Stewart Horejsi. The Advisers have independent

1.      **The 2006 Proxy Statement**

In April 2006, in connection with the annual meeting of stockholders, the Fund issued a proxy statement allowing the shareholders to vote on the following three proposals:  (i) the annual election of directors; (ii) adoption of a managed distribution policy to all common stockholders ("Managed Distribution Policy") and (iii) a "housecleaning item" relating to the Fund's charter.  (*See* Ex. C to Compl. at pp. 3-4.)  The Managed Distribution Policy "allows a fund to provide a regular, periodic distribution to its common stockholders which is not dependent on the amount of income earned or capital gains realized by the Fund."  (*Id.*, Ex. C at p. 13.)  The 2006 Proxy Statement contains a "Questions & Answers Regarding the Meeting and Proposals" section which specifically addresses the question "What are the primary disadvantages of the Managed Distribution Policy."  (*Id.*, Ex. C at p. 4.)  Moreover, the 2006 Proxy Statement contains 4 pages of explanations and disclosures concerning the Managed Distribution Policy.  (*Id.*, Ex. C at pp. 13-16.)  Specifically, the 2006 Proxy states that "[i]n recent years, managed distribution policies appear to have been effectively used to narrow trading discounts for closed-end funds, and the Board believes that the Managed Distribution Policy could have a similar effect on the Fund's discount.  ***Of course there can be no assurance that the Managed Distribution Policy will narrow the Fund's discount or, if this does occur, that it will persist over the long term.***"  (*Id.* at 13.)  (Emphasis added.)  In sum, the Fund disclosed that the effect of the Managed Distribution Policy could be to raise the price that the stock is trading in the open market, but also disclosed that any rise may only be temporary, and that the policy could be terminated by the Directors at any time if they thought it was in the best interest of

counsel.  Additionally, Barr, Jacobson, Stewart Horejsi and John Horejsi have not yet been served in this case.

the Fund.  No other proposals were made in the 2006 Proxy Statement, and the measures described in the Proxy Statement were all approved by the shareholders.

2.   <strong><u>2007 Proxy Statement</u></strong>

On March 8, 2007, in connection with the annual meeting of stockholders, the Fund issued a proxy statement which contained two proposals for shareholder vote.  (Compl., Ex. A.)   The first proposal was a routine proposal for the annual election of directors.  The second proposal sought only to change the Fund's current industry concentration policy and clarify and expand the Fund's investment restriction regarding investments in real estate related companies.  (*Id.* at pp. 1-2.)   No other proposals were made in the 2007 Proxy Statement, and the measures described in the Proxy Statement were all approved by the shareholders.

3.   <strong><u>The Rights Offering</u></strong>

On April 30, 2007, the Fund issued a press release which announced that at the regularly scheduled Board of Directors meeting on April 27, 2007, the Directors of the Fund approved a 1-for-1 transferable Rights Offering for the Fund ("Rights Offering").  (Compl. at p. 19, ¶ 48.)  The announcement stated that

> The rights offering will permit stockholders to acquire one new share of the Fund for each right held at a subscription price equal to the greater of net asset value (NAV) on the expiration date of the offering or 80% of the volume-weighted average sales price of a share of the Fund's common stock on the New York Stock Exchange (NYSE) on the expiration date of the offering and the four immediately preceding trading days.  It is expected that the rights will be transferable and will be registered and admitted for trading on the NYSE.  In addition to the shares offered in the primary subscription, the Fund will offer an over-allotment of 11.3 million shares to over-subscribing stockholders.

*Id.*

Therefore, the Rights Offering made clear that the additional shares could not be offered at below the NAV at the expiration of the offering, thus ensuring that the issuance of additional shares would not dilute the NAV of the Fund.  *Id.*

Because the Right Offering would not be dilutive, no shareholder vote was required to implement the Rights Offering, but rather it was done by the Directors as provided by Section 23 of the ICA.  On May 7, 2007, the Fund filed a draft Registration Statement with the SEC to register the securities to be offered in the Rights Offering ("Draft Registration Statement").  (RJN, Ex. C.)  The document is available to the public.  In the Draft Registration Statement, the Board provided the reasons that it believes the Rights Offering is in the best interests of the Fund.  Some of these reasons included:

- It will provide the existing common stockholders an opportunity to purchase additional shares at a price that is potentially below market value without incurring any commission or transaction charges.

- Raising more capital will better position the Fund to take advantage of investment opportunities that may arise.

- Increasing the Fund's assets will provide the Fund flexibility in maintaining the Managed Distribution Policy.

- Increasing Fund assets may lower the Fund's expenses as a proportion of net assets because the Fund's fixed costs would be spread over a larger asset base.  The Fund also cautioned that "[t]here can be no assurance that by increasing the size of the Fund, the Fund's expense ratio will be lowered."

- Possible increased liquidity of shares due to the increase in the Fund's outstanding shares.

- Because the Rights are transferable, non-participating stockholders can receive a cash payment upon the sale of the Rights.

- Reduction of the Fund's leverage.

- Providing the Fund greater flexibility to buy and hold investments without violating its asset-coverage ratio.  (Draft Registration Statement, RJN, Ex. C at pp. 16-17.)

The Draft Registration Statement specifically provides notice to investors that "the common stock of closed-end funds frequently trades at a market price that is less than the value of the net assets attributable to those shares (a "discount")."  (*Id.* at p. 23.)  This warning also appears on other registration statements publicly filed by the Fund prior to April 2007.  (RJN, Exs. D and E.)  Therefore, the Fund repeatedly provided notice to actual and potential shareholders that a market price above NAV is an anomaly.

### B.   Plaintiff's Allegations

Plaintiff's Complaint improperly substitutes speculation for factual allegations to cast aspersions on the careful manner in which the Fund has conducted its corporate affairs.  Plaintiff is an attorney who shares an office with his counsel in New York City.  (RJN, Exs A and B, Exhibit A attached hereto.)  He alleges that he held 700 shares of the Fund "prior to the April 30, 2007 announcement of the Rights Offering and continues to hold Fund shares."  (Compl., at p. 9, ¶ 21.)  [5]

Plaintiff's Complaint does not allege any specific false or misleading statements made in any proxy statement.  Instead, the entire complaint is based on the premise that Stewart Horejsi, the

---

[5] Plaintiff does not, however, allege that he held shares prior to the issuance of the Proxy Statements in 2006 or 2007.  Plaintiff has not alleged a violation of any statute relating to the Draft Registration Statement concerning the Rights Offering, yet uses the Rights Offering as the pretext to impugn the 2006 and 2007 Proxy Statements.  Plaintiff, therefore, evasively pleads around whether he owned stock at the time of the proxy statements of which he is complaining.  His failure to allege continuous stock ownership runs afoul of the requirements for derivative actions under Rule 23.1.

portfolio manager for BIA and SIA, has used the Fund as "a shell game primarily designed to enrich Horejsi." (Compl. at p. 4, ¶ 5 and p. 5, ¶ 9.)  Plaintiff alleges that "the genesis of this scheme" to enrich Horejsi first began in a Proxy Statement disseminated in April 7, 2006. (Compl. at p. 6, ¶ 10 and Ex. C thereto.)  Plaintiff alleges that Horejsi caused the Directors to propose a proxy statement that requests that the shareholders approve a dividend distribution policy. (*Id.* at p. 6, ¶ 11.) Plaintiff then leaps to the conclusory allegation that "the Proxy Statement did not disclose that the real purpose was to inflate the market price of the Fund so Horejsi could thereafter effect [sic] a coercive and dilutive Rights Offering to vastly increase the number of shares in the Fund, and his fees." (*Id.* at p. 6, ¶ 12.)  Any injury based on these allegations could only belong to the Fund.

Plaintiff also leaps to the conclusion that "the real reason for the proposal and the requested shareholder ratification was to use the new distribution plan to inflate the market price of the Fund's shares so as to make the dissemination of the Rights Plan a viable option." (Compl. at p. 16, ¶ 39.) In addition, Plaintiff baldly alleges that "Defendants Horejsi, J. Horejsi, BIA [sic] SIA and Looney were aware of the real reason behind the managed distribution proposal." (*Id.* at p. 16, ¶ 40.) Nowhere in the Complaint, however, does he allege that the Managed Distribution Proposal, on its own, harmed shareholders, or that there was anything improper about the distribution.  Moreover, Plaintiff has failed to allege any facts stating how a vote to elect shareholders or change the Fund's concentration policy in the 2007 Proxy Statement has any relationship to the Rights Offering. (Compl. at p. 18, ¶¶ 45-47.)  There is no such relationship.

With respect to the Rights Offering, Plaintiff acknowledges that, prior to the issuance of the announcement of the Rights Offering, the Fund placed a narrative on its website concerning the possibility that the Fund would issue Rights Offerings.  The narrative clearly stated: "Since the Funds may conduct Rights Offerings from time to time, we urge you to buy Fund shares only if you

are comfortable knowing there may be Rights Offerings, and if you are sufficiently disciplined to avoid selling during the period before and after the offerings. A few months after the Rights Offering ends, the discount usually returns to the level that reflects investorss' sentiment about the future of that Fund without any influence from the rights activity. **However, there is no certainty in this occurring.**" (Emphasis added). (Compl. at p. 20, ¶ 50 and fn. 4.)

Because the Rights Offering has not yet occurred, Plaintiff's allegation that this statement is misleading is speculative and without any factual basis. Moreover, the narrative clearly discloses the potential downside of a Rights Offering, and further states that during the months before the offering, the trading price of the shares on the open market may decline. Consequently, every statement therein is accurate, and correctly provides the potential outcomes of the Rights Offering.

## III.   STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 U.S. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Rocky Mountain Christian Church v. Bd. of County Com'rs of Boulder County, Colo.*, 481 F. Supp. 2d 1213 (D. Colo. 2007); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002), *cert. denied*, 538 U.S. 999 (2003). Indeed, courts need not "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996); *see also Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321 (4th Cir. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 1357 at 318 (2d ed. 1990)).[6]

With these principles in mind, a complaint must be dismissed if, accepting the allegations as true, it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir. 1988). There is no set of facts that can support Plaintiff's claims; consequently, the complaint must be dismissed.

## IV.   PLAINTIFF'S CLAIMS UNDER THE ICA AND STATE LAW CLAIMS MUST BE DISMISSED BECAUSE THEY ARE DERIVATIVE IN NATURE.

Though Plaintiff has styled his claims under Section 20(a) and state law claims for breach of fiduciary duty as direct claims on behalf of himself and other Fund shareholders, these claims are derivative in nature as a matter of law. Whether Plaintiff's claims are direct or derivative is a question of state law. *Kamen*, 500 U.S. at 108. Under Maryland law, claims are direct if the shareholder's injury is distinct from the injury suffered by the corporation. *Tafflin v. Levitt*, 92 Md. App. 375, 608 A. 2d. 817, 820 (Md. Ct. Spec. App. 1992). Here, Plaintiff contends that the Rights Offering will decrease the value of the Fund. (Compl. at p. 7, ¶ 14.) This claim belongs to the Fund, and should have been brought as a derivative action. *See In re Dreyfus Mut. Fund Fee Litig.*, 428 F. Supp. 2d 357, 360 (W.D. Pa. 2006) (shareholders' harm because of a decrease in the value of a shareholder's mutual fund holdings held to be derivative under Maryland law); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222 (S.D.N.Y 2005) (claims of mutual funds mismanagement that allegedly reduced asset value of funds, in violation of ICA, were required to be brought derivately).

---

[6] In ruling on a motion to dismiss, a court may rely on public documents quoted by, relied upon, incorporated by reference in, or otherwise integral to the complaint, and such reliance does not convert such a motion into one for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); *In re e.spire Commc'ns, Inc. Sec. Litig.*, 127 F. Supp. 2d 734, 737 (D.Md. 2001). Courts routinely take judicial notice of various facts and documents, including documents required to be filed with the SEC. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-1018 (5th Cir. 1996).

If the claim is derivative, it cannot be brought directly as a class action. *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734-37 (3d Cir. 1970).

Plaintiff's Section 20(a) claims and state law claims are derivative because they seek only a judicial declaration that the votes given in support of the proxy statements are a nullity and to enjoin the consummation of the Rights Offering to allegedly prevent "dilution." (Prayer at p. 27, ¶ B.) In addition, Plaintiff alleges that certain Defendants breached their fiduciary duties by "knowingly engag[ing] in a plan and scheme to pump up the market price of the Fund." (Compl. at p. 26, ¶ 77.) Even if these claims were not legally precluded, at best they belong only to the Fund, and thus must be dismissed because Plaintiff did not make a demand on the Board with respect to them. *See Werbowsky v. Collomb*, 362 Md. 581, 766 A. 2d 123 (Md. 2001) (explaining that a director's statutory duties of good faith and due care run directly to the corporation.) [7]

1. **Because Plaintiff's 20(a) and State Law Claims Seek to Redress an Injury to the Entity, They Are Derivative.**

Under Maryland law, a director's fiduciary obligations run "to the corporation and not, at least directly, the shareholders." *Werbowsky*, 362 Md. at 598-99, 766 A. 2d at 133 (applying rule to Section 2-405.1(a) of Md. Corps. & Ass'ns Code Ann.) In *Waller v. Waller*, 187 Md. 185, 194, 49 A. 2d 449, 454 (Md. 1946), the Maryland Court of Appeals stated that "[i]t is generally stated that directors occupy a fiduciary relation to the corporation and all its stockholders, but they are not trustees for the individual stockholders." The Court explained that "[t]he reason for this distinction is that in law the corporation has a separate existence as a distinct person, in which all the corporate property is vested and to which the directors are responsible for a strict and faithful discharge of

---

[7] Indeed, in support of his legal theory that the statements in the proxy statements "violate proxy laws," Plaintiff cites only a Delaware derivative case, *Sample v. Morgan*, 914 A. 2d 647 (Del Ch. 2007). (Compl. at p. 18, ¶ 45.) The case is also inapplicable because Plaintiff's state law claims are expressly preempted. *See* Looney Motion to Dismiss at pp. 11 through 13.

their duty, **but there is no legal privity or immediate connection between the directors and the individual stockholders**." *Id.* (Emphasis added.) The court then held that "[w]here directors commit a breach of trust, they are liable to the corporation, not to its creditors or stockholders, and any damages recovered are assets of the corporation, and the equities of the creditors and stockholders are sought and obtained through the medium of the corporate entity." *Id.* at 190, 49 A. 2d at 452. Under *Waller*, any dilution in the price or value of the stockholders' shares is not an actionable direct injury. *Id.* at 189, 49 A. 2d at 452. To the contrary, it is derivative in nature.

This case is not the first time that Plaintiff has improperly brought a direct shareholder action for claims that are only derivative. In *Paskowitz v. Wohlstadter*, 151 Md. App. 1, 10, 822 A. 2d 1272, 1277 (Md. Ct. Spec. App. 2003), the same Laurence Paskowitz brought a claim for breach of loyalty under Maryland law against directors of a company for allegedly making material misstatements and omissions in a proxy statement by not fully disclosing the details about a joint venture. In that case, the Maryland court granted the company's motion to dismiss on the grounds that the claim can only be brought derivatively. The court held that because the actual transaction the shareholders were voting on did not relate to the transaction at issue, and related to corporate governance, the claims could only be brought derivatively.

The case *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. Civ. RDB 05-841, 2005 WL 2989343 (D. Md. Nov. 3, 2005) (applying Maryland law), is also persuasive to show that Plaintiff's claims seeking a judicial declaration to nullify the proxies and enjoin the Rights Offering are derivative. In *Jolly Roger*, the plaintiff shareholders contended that the defendant directors wrongfully sold newly issued shares for a discounted price in a private sale to four institutional investors in order to entrench themselves as directors of the company. In addition, the court assumed that the directors' actions diluted both the shareholders' voting power and share/asset

value.  The court held that such claims were derivative because they belonged to the corporation. 2005 WL 2989343 at * 6 (citing *Waller*, 187 Md. at 189, 49 A. 2d at 452 (holding that any dilution in price or value of the stockholders' shares is not an actionable direct injury.)  As a result, the Court granted the motion to dismiss brought by the directors of the corporation.

The same reasoning used in *Wohlstadtler*, *Jolly Roger* and *Waller* applies here to show that Plaintiff's claims are derivative.  Plaintiff specifically alleges that the purported omissions in the proxy statements were designed to enrich Stewart Horejsi and the Advisers, to the detriment of the Fund. (Compl. at p. 2-3, ¶ 1)   Any incidental purported harm to the shareholders does not change the requirement that the claim be brought derivatively.   Accordingly, the Court should dismiss Claims 1, 2, 4 and 5 for Plaintiff's failure to bring them derivatively.

### 2.   Plaintiff's Claims Under Section 20(a) and State Law Must Be Dismissed Because He Has Not Alleged a Demand on the Board

#### a.   Maryland law requires that Plaintiff make a demand on the Board or allege demand futility.

In a derivative action, both Maryland law and Rule 23.1 of the Federal Rules of Civil Procedure require that a shareholder make prior demand on the board of directors before filing his complaint in order to have standing.   *Werbowsky*, 766 A. 2d 123, 133.   This long-standing requirement reflects the "extraordinary" nature of the derivative device, and ensures that the corporate entity is not ignored or bypassed with respect to derivative claims.  *Id.*  The Maryland Court of Appeal held that the demand requirement is important, and not onerous.  Indeed,

> It may be their first knowledge that a decision or transaction they made or approved is being questioned. . . .  It also virtually assures extensive and expensive judicial wrangling over a peripheral issue that may result in preliminary determinations regarding director culpability that, after trial on the merits, turn out to be unsupportable.

*Id.* at 144

Plaintiff attempts to subvert the demand process by purporting to bring this claim directly, without regard to the clear mandate from Maryland law and Rule 23.1.  Nor has Plaintiff alleged demand futility.  Plaintiff therefore lacks standing to bring these claims.  *See Werbowsky* at 133.

> b.  Demand is not excused under Maryland law.

Rule 23.1 of the Federal Rules of Civil Procedure requires that the facts supporting demand futility be alleged with particularity.  *Andropolis v. Snyder*, Nos. 05-cv-01563-EWN-BNB, 05-cv-01903, 05-cv-1707, 2006 WL 2226189 at *6 (D. Colo. Aug. 3, 2006.)  "The recognized purpose behind Rule 23.1 is to avoid multiplicity of suits against corporations by individual shareholders or small groups of shareholders."  *Brooks v. Land Drilling Co.*, 564 F. Supp. 1518, 1521 (D. Colo. 1983).  Maryland law requires plaintiffs to demonstrate that a majority of the board of directors are "interested" to excuse demand based on futility.  *Werbowsky*, 766 A. 2d at 144 (holding that the demand requirement is subject to "a very limited exception" when a "majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to the demand in good faith and within the ambit of the business judgment rule.")  Plaintiff cannot meet this standard.

Plaintiff has not alleged that demand is excused on the basis of futility.  Plaintiff's allegations that Looney (but not Barr or Jacobson) has a conflict of interest with the Fund, and is under the influence of Horejsi, fail to satisfy this pleading burden.  (Complaint at pp. 10-11, ¶ 25.)  Maryland law presumes that an investment company director is disinterested and independent unless he is an "interested person," under the ICA.  Md. Corps. & Ass'ns § 2-405.3.  Under the ICA, interested directors include employees or affiliates of the advisor, or those "controlled" by the advisor.  15 U.S.C. §§ 80a-2(a)(3) and  (19).  The independent directors, however, are statutorily presumed to be disinterested.  15 U.S.C. § 80a-2(a)(9) ("A natural person shall be presumed not to be a controlled

person within the meaning of [the ICA].”); *see Krantz. v. Prudential Invs. Fund Mgmt. LLC*, 77 F. Supp. 2d 559, 563 (D.N.J 1999) (“Plaintiff’s burden to plead facts that state a claim [based on director non-disinterestedness], rather than mere legal conclusions, is heightened here by the statutory presumption against his claim.”).  Plaintiff cannot meet his burden to demonstrate that a majority of directors are interested.  Plaintiff alleges that Looney, Barr and Jacobson serve as directors of other Funds, and were compensated for doing so.  (Compl. at pp. 10-11, ¶ 25-27.)  Such allegations are patently insufficient to create an inference of “interested person” that would excuse a demand as futile:

> The only factual allegation plaintiff does include in the Amended Complaint – that the Fund’s directors serve on boards of multiple funds for which they receive significant compensation – fails to state a claim for relief.  Courts have unanimously held so.

*Krantz. v. Prudential Invs. Fund Mgmt.* LLC, 77 F. Supp. 2d at 563; *see also Krantz v. Fidelity Mgmt. & Research Co.*, 98 F.Supp. 2d 150 (D. Mass 2000).[8]

Plaintiff has not met his burden of demonstrating that a majority of the Fund’s directors are not independent and disinterested in order to satisfy the strict requirements for demand futility. Accordingly, Plaintiff’s claims under Section 20(a) and state law must be dismissed.

## V.   CONCLUSION

For the reasons set forth above, and as set forth in the Motions to Dismiss filed by Looney and the Investment Advisers, Plaintiff’s Claims 1, 2, 4 and 5 must be dismissed

---

[8] It is also well-established that under the common law of Maryland, a court will not look upon directors as interested for the purposes of establishing demand futility simply because they are paid for their services on the board, or because of a prior employment relationship with a party who may benefit financially. *Werbowsky*, 766 A. 2d at 143, 145-46 (referring to such allegations as “smoke and mirrors.”)   Nor can Plaintiff avoid the demand requirement by alleging that the Independent Directors participated in the challenged conduct. *Id.* at 143.  Any contrary holding would make the demand requirement irrelevant because it is only natural that directors – such as the Independent Directors –have voted to take actions that Plaintiff and their counsel may want to challenge later.

Dated: June 11, 2007                  Respectfully Submitted,

                                      By: : s/ William F. Sullivan
                                      William F. Sullivan
                                      Joshua G. Hamilton
                                      PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                      515 South Flower Street, 25th Floor
                                      Los Angeles, California  90071-2228
                                      Telephone:    (213) 683-6000
                                      Facsimile:    (213) 627-0705
                                      E-mail:       williamsullivan@paulhastings.com
                                      *Attorneys for Nominal Defendant*
                                      *Boulder Growth & Income Fund, Inc.*


                                      Lawrence W. Treece
                                      Christian H. Hendrickson
                                      SHERMAN & HOWARD L.L.C.
                                      633 Seventeenth Street, Suite 3000
                                      Denver, Colorado  80202
                                      Telephone:    (303) 297-2900
                                      Facsimile:    (303) 298-0940
                                      E-mail:       chendrickson@shermanhoward.com
                                                    ltreece@shermanhoward.com
                                      *Attorneys for Nominal Defendant*
                                      *Boulder Growth & Income Fund, Inc.*

## CERTIFICATE OF SERVICE

 I hereby certify that on June 11, 2007, I electronically filed the foregoing **NOMINAL DEFENDANT BOULDER GROWTH & INCOME FUND, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. 12(b)(6)** with the Clerk of Court using the CM/ECF system for filing which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Gerald L. Bader, Jr., Esq.<br>Email:  gbader@bader-associates.com<br><br>Renée B. Taylor, Esq.<br>Email:  rbtaylor@bader-associates.com<br><br>ATTORNEYS FOR PLAINTIFF | Lester C. Houtz, Esq.<br>Email:  lester.houtz@hartlit-beck.com<br><br>Renee Grimmett<br>E-mail  renee.grimmett@bartlit-beck.com<br><br>ATTORNEYS FOR DEFENDANTS BOULDER INVESTMENT ADVISERS, L.L.C. AND STEWART WEST INDIES TRADING COMPANY, LTD., d/b/a STEWART INVESTMENT ADVISERS |

 I further certify that on June 11, 2007, a true and correct copy of the foregoing **DEFENDANT BOULDER GROWTH & INCOME FUND, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. 12(b)(6)** was transmitted via UPS by delivering such document to an overnight mail service or an authorized courier in a sealed envelopes or packages designated by the express service courier addressed to the persons on whom it is to be served as follows:

  Roy L. Jacobs
  Roy Jacobs & Associates
  60 East 42nd Street, 46th Floor
  New York, NY  10165
  Telephone: (212) 867-1156
  Facsimile: (212) 504-8343

  ATTORNEYS FOR PLAINTIFF

       s/ Carol A. Nagai
        Carol A. Nagai