IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-CV-01053 WYD-BNB

_____

LAURENCE D. PASKOWITZ,

        Plaintiff,

v.

JOEL W. LOONEY,
DEAN L. JACOBSON,
RICHARD I. BARR,
JOHN S. HOREJSI,
SUSAN L. CICIORA,
STEWART HOREJSI,
BOULDER INVESTMENT ADVISERS, L.L.C, and
STEWART WEST INDIES TRADING COMPANY LTD, d/b/a STEWART INVESTMENT
ADVISERS,

        Defendants

    --and--

BOULDER GROWTH AND INCOME FUND, INC.,

        Nominal Defendant.

_____

**SPECIALLY APPEARING DEFENDANT JOEL W. LOONEY'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL
PROCEDURE SECTION 12(b)(6) AND 12(b)(2)**

_____

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .................................................................. 1

II.   FACTS ................................................................................................... 4

III.  PLAINTIFF'S CLAIMS UNDER SECTION 20(A) OF THE ICA SHOULD BE DISMISSED ............................................................................................. 4

    A.     The Court Should Dismiss Plaintiff's Claims Because No Private Right of Action Exists Under Section 20(a) ......................................................... 4

          1.     Legal precedent demonstrates the judicial trend to not imply private rights of action except as expressly provided by Congress ........... 5

          2.     The Court should not create a private right of action under Section 20(a) ................................................................................................ 7

    B.     Under Any Circumstances, the Proxy Statements Did Not Contain Any False or Misleading Statements ............................................................. 9

IV.  PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY SLUSA .................... 11

V.   THE COURT LACKS PERSONAL JURISDICTION OVER MR. LOONEY ............ 13

VI.  CONCLUSION ...................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alexander v. Sandoval,*
  532 U.S. 275 (2001)..................................................................5, 6, 7, 8, 9

*Araujo v. John Hancock Life Ins. Co.,*
  206 F. Supp. 2d 377 (E.D.N.Y. 2002) ............................................... 12

Asahi Metal Industry Co. v. Superior Court of California,
  480 U.S. 102 (1987).......................................................................... 14

*Bellikoff v. Eaton Vance Corp.,*
  481 F.3d 110 (2d Cir. 2007) ..................................................3, 6, 7, 8

Calder v. Jones,
  465 US 783 (1984) ............................................................................ 14

*Dacey v. Morgan Stanley Dean Witter & Co.,*
  263 F. Supp. 2d 706 (S.D.N.Y. 2003) .............................................. 12

*Davis v. Bailey,*
  No. CIVA05CV00042WYD-OES, 2005 WL 352786 (D. Colo. Dec. 22, 2005) ............... 2, 4, 8

*Doe v. Nat'l Med. Servs.,*
  974 F.2d 143 (10th Cir. 1992) .......................................................... 14

*Dudek v. Prudential Sec., Inc.,*
  295 F.3d 875 (8th Cir. 2002) ............................................................ 12

*Fairbrother v. American Monument Foundation, LLC,*
  340 F.Supp.2d 1147 (D. Colo. 2004) ............................................... 14

*Feitelberg v. Merrill Lynch & Co.,* Inc.,
  234 F. Supp. 2d 1043 (N.D. Cal. 2002) ............................................ 12

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,*
  528 F. Supp. 1038 (S.D.N.Y. 1981) ................................................... 7

*General Elec. Co. by Levit v. Cathcart,*
  980 F.2d 927 (3d Cir. 1992) ....................................................3, 9, 10

*In re Alger, Columbia, Janus, MFS, One Group, and Putnam Mut. Fund Litig.,*
  320 F. Supp. 2d 352 (D. Md. 2004) .................................................. 12

*In re Goldman Sachs Funds Fee Litig.,*
  No. 04 Civ. 2567 (NRB), 2006 WL 126772 at *5 (S.D.N.Y. Jan, 17, 2006) .............. 8

*In re Mut. Funds Inv. Litig.,*
  384 F. Supp. 2d 845 (D. Md. 2005) .................................................... 7

*In re Salomon Smith Barney Mut. Fund Fees Litig.,*
  441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................. 3

*In re Salomon Smith Barney Mut. Fund Litig.,*
  441 F. Supp. 2d 579 (S.D.N.Y. 2006) ............................................... 12

## TABLE OF AUTHORITIES
### (continued)

Page

*J.I. Case Co. v. Borak,*
   377 U.S. 426 (1964) ................................................................................................. 7

*Jacobs v. Bremner,*
   378 F. Supp. 2d 861 (N.D. Ill. 2005) ................................................................... 8

*Kamen v. Kemper Fin. Sec., Inc.,*
   500 U.S. 90 (1991) ................................................................................................. 7

*Krinsk v. Fund Asset Mgmt., Inc.,*
   654 F. Supp. 1227 (S.D.N.Y. 1987) ..................................................................... 7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
   547 U.S. 71 (2006) ......................................................................................... 11, 13

*Mills v. Electric Auto-Lite Co.,*
   396 U.S. 375 (1970) ............................................................................................. 9

*Mutchka v. Harris,*
   373 F. Supp. 2d 1021 (C.D. Cal. 2005) ............................................................... 8

*Olmsted v. Pruco Life Ins. Co.,*
   283 F. 3d 429 (2d Cir. 2002) ................................................................2, 5, 6, 7, 8, 9

*Prager v. Knight/Trimark Group, Inc.,*
   124 F. Supp. 2d 229 (D.N.J. 2000) ............................................................... 11, 12

*Prof'l Mgmt. Assocs., Inc. v. KPMG LLP,*
   335 F.3d 800 (8th Cir. 2003) ............................................................................. 13

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   292 F.3d 1334 (11th Cir. 2002) .......................................................................... 11

*Royal Bus. Group, Inc. v. Realist, Inc.,*
   933 F.2d 1056 (1st Cir. 1991) ...................................................................... 10, 13

*Schuyt v. Rowe Price Prime Reserve Fund, Inc.,*
   622 F.Supp. 169 (S.D.N.Y. 1985) ....................................................................... 7

*SGI Air Holdings II, LLC, v. Novartis Int'l, AG,*
   192 F. Supp. 2d. 1195 (D. Colo. 2002) ............................................................. 15

*Touche Ross & Co. v. Redington,*
   442 U.S. 560 (1979).......................................................................................... 5, 6

*TSC Indus., Inc. v. Northway, Inc.,*
   426 U.S. 438 (1976) ........................................................................................... 10

*United Canso Oil & Gas Ltd. v. Catawba Corp.,*
   566 F. Supp. 232 (D. Conn. 1983)...................................................................... 10

*White v. Heartland High-Yield Mun. Bond Fund,*
   237 F. Supp. 2d 982 (E.D. Wis. 2002) ................................................................ 7

*Wilshire Oil Co. v. Riffe,*
   409 F.2d 1277 (10th Cir. 1969) .......................................................................... 14

# TABLE OF AUTHORITIES
## (continued)

**Page**

### STATUTES

15 U.S.C. § 20(a) ................................................................................................ 4

15 U.S.C. § 80a-20(a) ......................................................................................... 4

15 U.S.C. § 80a-41 ..................................................................................... 2, 6, 8

Federal R. of Civ. P. 12, (b)(2), 12(b)(6) ...................................................... 1, 2

### OTHER AUTHORITIES

Securities and Exchange Act of 1934,
  § 14(a) ............................................................................................................ 9

Securities Exchange Act of 1934,
  § 28(f)(1), as amended, 15 U.S.C.A. § 78bb(f)(1) ................................... 3, 11

Specially appearing Defendant Joel W. Looney hereby moves this Court, pursuant to Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss claims 1 and 2 alleging violations of Section 20(a) of the Investment Company Act of 1940 ("ICA") and claims 4 and 5 alleging state law claims for breach of fiduciary duty and permanent injunction, respectively. Mr. Looney also joins the arguments of the Boulder Growth & Income Fund, Inc. (the "Fund") and the Boulder Investment Advisers ("BIA") and Stewart Investment Advisers ("SIA") (collectively the "Advisers") in their Motions to Dismiss under Rule 12(b)(6) for alleged violations of claims 1, 2, 3, 4, and 5.[1]  For the reasons set forth below, the Court should grant Mr. Looney's Motion.

## I.   **PRELIMINARY STATEMENT**

Plaintiff Laurence Paskowitz ("Plaintiff") has constructed a creative tale that takes impermissible liberties with the facts and lacks a credible legal basis.[2]  As explained below, Plaintiff's Complaint cannot survive scrutiny because it contains incurable legal deficiencies that eclipse mere pleading defects.  Accordingly, Mr. Looney respectfully request that the Court grant this Motion under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2), without leave to amend.

Plaintiff has brought his purported class action complaint against a variety of Defendants related to and including the Boulder Growth & Income Fund (the "Fund"), a registered closed-end, non-diversified management investment company, whose activities are governed by the Investment

---

[1] Mr. Looney was not named in Claim 3 based on Section 36(b) of the Investment Company Act of 1940.  In addition, Claim 5 for Permanent Injunction fails because a permanent injunction is a remedy and not a claim.  Plaintiff seeks a permanent injunction based on his other claims against Mr. Looney, all of which are legally precluded.  Therefore, Plaintiff has no remedy for permanent injunction.

[2] Plaintiff's complaint specifically cites to a May 11, 2007 Internet article from TheStreet.com as "revealing" that the operation of the Boulder Growth & Income Fund "had been a shell game primarily designed to enrich [portfolio manager Stewart] Horejsi."  (Compl. at p. 5, ¶ 9.)  Plaintiff filed his suit only one week after this article appeared.

Company Act of 1940 (the "ICA").  Mr. Looney is an outside member of the Board of Directors ("Directors") of the Fund.  Congress specifically delegated responsibility for the enforcement of the ICA with the Securities and Exchange Commission ("SEC").  15 U.S.C. § 80a-41.  Plaintiff's attempt to bring claims arising under the ICA demonstrates a complete misapprehension of this highly regulated statute.

Plaintiff's complaint focuses on allegations that the Fund's Directors violated Section 20(a) of the ICA and breached their fiduciary duty to shareholders by disseminating materially false proxy statements dated April 7, 2006 ("the 2006 Proxy Statement") and March 8, 2007 (the "2007 Proxy Statement").  Plaintiff contends that these proxy statements were part of a scheme intended to enrich Fund manager Stewart Horejsi and "his affiliates" to the detriment of the Fund and its shareholders when the Fund announced a "Rights Offering" on April 30, 2007.  (Complaint "Compl." at pp. 2-3, ¶ 1.)  Even assuming all of Plaintiff's factual allegations are true for the purpose of this Motion, the Court must dismiss Plaintiff's claims under Rule 12(b)(6).

The flaws requiring dismissal of this case are numerous and fatal:

**Section 20(a) does not provide a private right of action:**  Plaintiff's first two claims allege violations of Section 20(a) against Looney, John Horejsi, Susan Ciciora, Richard Barr, and Dean Jacobson for purported misrepresentations and omissions in proxy statements disseminated to investors.  This Court is familiar with the restrictions on private right of actions under the ICA, having recently analyzed the statute and dismissed a claim under another section of the ICA.  *See Davis v. Bailey*, No. 05CV00042 WYD-OES, 2005 WL 352786 (D. Colo. Dec. 22, 2005) (holding no private right of action exists under Section 36(a)).  Similarly, Section 20(a) does not provide a private right of action, and may only be enforced by the SEC.  *See Olmsted v. Pruco Life Ins. Co.*, 283 F. 3d 429 (2d Cir. 2002) (holding no private right of action exists under Sections 26(f) and 27(i) of the ICA).

Indeed, since *Olmsted*, courts have uniformly held that no private right of action exists under any Section of the ICA other than for money damages under Section 36(b).   *See, e.g., Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007).

**Plaintiff has not alleged any material misstatement or omission in a proxy statement:** Plaintiff has not alleged any specific misstatement or omission in the 2006 or 2007 Proxy Statement. Plaintiff has therefore failed to state a claim because the Rights Offering about which the Plaintiff complains has nothing to do with the proxy statements.[3]   *See General Elec. Co. by Levit v. Cathcart*, 980 F.2d 927 (3d Cir. 1992) (dismissing claim based on false and misleading proxy on the grounds that the shareholders' votes did not authorize the transactions that caused the losses).

**Plaintiff's state law claims are preempted by the Securities Litigation Uniform Standards Act:**   Because Plaintiff's allegations are in connection with the purchase and sale of securities, they are preempted by the Securities Litigation Uniform Standards Act ("SLUSA").   *See e.g., In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 603-604 (S.D.N.Y. 2006). Securities Exchange Act of 1934, § 28(f)(1), as amended, 15 U.S.C.A. § 78bb(f)(1).

**Plaintiff cannot meet his burden to show that this Court has jurisdiction over Mr. Looney:**   Separate and apart from Plaintiff's failure to allege a substantive claim against Looney, Plaintiff's attempt to assert this Court's jurisdiction over Looney violates his due process, as he does not have minimum contacts with Colorado to confer this Court's jurisdiction over him.   Mr. Looney is a resident of Kansas, has never worked or lived in Colorado, and conducted no activities in Colorado that relate to the allegations in this case.   (Declaration of Joel W. Looney ("Looney

---

[3] Section 34(b) of the ICA applies specifically to misrepresentations or omissions in a registration statement.   Plaintiff cannot allege a violation of Section 34(b) because courts have specifically held that there is no private right of action.   *See, e.g., Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110.   In addition, the registration is still only in draft form.   (*See* RJN, Ex. C.)

Decl."), ¶¶ 2 to 7).  Under such circumstances, this Court should dismiss Mr. Looney from this case on the basis that this Court does not have personal jurisdiction over him.

## II.   FACTS

Mr. Looney hereby incorporates the Facts in the Motion to Dismiss brought on behalf of the Fund.  *See* Fund's Motion to Dismiss at Section II, pp. 6 through 9 [Docket No. 31].

## III.   PLAINTIFF'S CLAIMS UNDER SECTION 20(A) OF THE ICA SHOULD BE DISMISSED

### A.   The Court Should Dismiss Plaintiff's Claims Because No Private Right of Action Exists Under Section 20(a).

There is no private right of action for plaintiffs to pursue under Section 20(a) of the ICA. 15 U.S.C. § 80a-20(a).  Section 20(a) provides:

> It shall be unlawful for any person, by use of the mails or any means or instrumentality of interstate commerce or otherwise, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security of which a registered investment company is the issuer in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

The plain language of the statute does not provide for a private right of action.  Thus, Plaintiff is asking the Court to create new law that would read an implied private right of action into Section 20(a).  Recent Supreme Court authority and the overwhelming consensus of court decisions regarding the ICA precludes such a finding.  Indeed, Plaintiff wishes this Court to completely disregard its careful analysis of private rights of action under the ICA, which led to its holding that no private right of action exists for claims under Section 36(a).  *Davis v. Bailey*, 2005 WL 3527286 at *4 (D. Colo. 2005) (stating that "to the extent that Congress gave a method of enforcement to the SEC only, this would imply that a private right of action is not authorized by others.")

1.      **Legal precedent demonstrates the judicial trend to not imply private rights of action except as expressly provided by Congress.**

The Supreme Court's mandate for determining whether an implied right of action exists in a statute was set forth in *Alexander v. Sandoval*, 532 U.S. 275, 286-287 (2001):

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. . . . Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute . . . . Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

*Id.* *(Citations omitted)* (Internal quotations omitted) (finding that no implied right of action exists to enforce disparate-impact regulations promulgated under the Civil Rights Act of 1964). The Court further stated that the courts must "begin . . . [their] search for Congress's intent with the text and structure of the statute." *Id.* at 288.

Given the opportunity to apply these principles to the ICA, the Second Circuit found that no private right of action exists under Section 26(f) and 27(i) of the ICA. *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F. 3d 439, 436 (2d Cir. 2002). Adhering to the Supreme Court's rationale in *Sandoval*, the Second Circuit stated that "[a] court must 'begin [its] search for Congress's intent with the text and structure' of this statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided." *Id.* at 432; *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979) ("Implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best.") Because "no provision of the ICA explicitly provides for a private right of action for violations of either § 26(f) or § 27(i) . . . we must presume that Congress did not intend one." *Id.*

The Second Circuit recently expanded its determination of ICA sections that do not provide private rights of action.  *Bellikoff v. Eaton Vance Corp.*, 481 F. 3d 110 (2d Cir. 2007) (holding no private right of action exists under Sections 34(b), 36(a), and 48(a).  In its holdings, the Second Circuit found that this presumption was "strengthened" by the fact that Sections 26(f), 27(i), 34(b), 36(a), and 48(a) "do not contain rights-creating language."  Rather,

> [the] language of these sections only describes actions . . . that are prohibited; it does not mention investors such as the plaintiffs. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'"

*Olmsted* at 433 (quoting *Sandoval* 532 U.S. at 289) (internal citations omitted).

Another critical factor the Supreme Court held to be important in determining Congressional intent is "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Sandoval*, 532 U.S. at 290.  Under the ICA, Section 42 explicitly provides for enforcement of all ICA provisions <u>by the SEC</u> through investigations and civil suits for injunctions and penalties.  *See* 15 U.S.C. § 80a-41.

Additionally, "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of any explicit private right to enforce other sections was intentional."  *Olmsted v. Pruco Life Ins. Co.*, 283 F. 3d at 433; *see also Touche Ross,* 442 U.S. at 572 ("Obviously . . . when Congress wished to provide a private right damage remedy, it knew how to do so and did expressly.")  Thus, in *Olmsted*, the Second Circuit found it compelling that Congress had created an express right of action to challenge excessive management fees on behalf of the fund charged by mutual fund advisers under Section 36(b) of the ICA.  The Second Circuit concluded that when Congress wanted to create a private remedy under the ICA, "it knew how to do so."  *Id.*

Similarly, the Second Circuit in *Bellikof* held that "it seems apparent that Congress's omission of an explicit private right of action in §§ 34(b), 36(a), and 48(a) was intentional.  481 F. 3d at 116. Since *Sandoval* and *Olmsted*, no court has found private right of action under any Section other than Section 36(b).  *See e.g., In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845 (D. Md. 2005) (no private right of action under Sections 34(b) and 36(a)); *White v. Heartland High-Yield Mun. Bond Fund*, 237 F. Supp. 2d 982, 987-88 (E.D. Wis. 2002) (no private right of action under Section 34(b).)

2.      **The Court should not create a private right of action under Section 20(a).**

In his complaint, Plaintiff baldly states that "Section 20(a) of the ICA provides a private right of action for the dissemination of a false proxy statement."  (Compl. at p. 2, fn 1.)[4]  Plaintiff's assertion is incorrect, as Section 20(a) does not provide for a private right of action.

Well before the decisions in *Sandoval and Olmsted*, the Supreme Court had an opportunity to interpret Section 20, but chose not to do so.[5]  *Kamen v. Kemper Fin. Sec., Inc.*, 500 U.S. 90 (1991). Since that time, no Court has addressed the issue of whether a private right of action exists under Section 20(a).  The overwhelming case authority adjudicating private rights of action under the ICA

---

[4] Plaintiff cites to a case from 1964, *J.I. Case Co. v. Borak,* 377 U.S. 426, 430-31 (1964), as support for this proposition.  Not only is *Borak* inapposite, it was also specifically disavowed by the Supreme Court in *Sandoval* at 286.

[5] Prior to *Olmsted,* courts that addressed the issue were divided as to whether a private right of action existed under Section 20(a).  In *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038, 1060-61, 66 (S.D.N.Y. 1981), the Court held that no private right of action existed under Section 20(a) (stating that such a claim "is the product of a fertile imagination.")  In *Krinsk v. Fund Asset Mgmt., Inc.*, 654 F. Supp. 1227, 1233-34 (S.D.N.Y. 1987), however, the Court decided that such a private right did exist.  *See also Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 622 F.Supp. 169, 172-77 (S.D.N.Y. 1985).  Both *Krinsk* and *Schuyt* are inconsistent with the holding in *Sandoval*, as the court in those cases relied on legislative history to imply a private right of action.  Because the Supreme Court specifically abandoned the "*angien regime*" that permitted the consideration of legislative history to interpret the ICA, Plaintiff can find no support in these outdated and obsolete cases.  *Sandoval* at 286 (stating that Supreme Court had abandoned the reasoning in previous cases that had given courts wide latitude to find implied rights of action to effectual congressional purpose.)

indicates that no such right exists. Indeed, the "logic of the Court's holding in *Olmsted* . . . applies equally to other sections [of the ICA]." *See In re Goldman Sachs Funds Fee Litig.*, No. 04 Civ. 2567 (NRB), 2006 WL 126772 at *5 (S.D.N.Y. Jan. 17, 2006) (citations omitted) (finding no private right of action under §§ 34(b) and 36(a)).

Because no provision of the ICA explicitly provides a private right of action under Section 20(a), the Court must begin with the presumption that none exists. *Bellikoff*, 481 F. 3d at 116. All other relevant features of the ICA buttress this presumption. First, "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others. *Sandoval*, 532 U.S. at 290; *Bellikoff v. Eaton Vance Corp.*, 481 F.3d at 116. There is no private right of action under Section 20(a) because Section 42 of the ICA explicitly provides for enforcement of all of the ICA provisions, including Section 20(a), by the SEC through investigations and civil suits for injunction and penalties. 15 U.S.C. § 80a-41.

Second, while Section 36(b) provides a right of action to either the SEC or to a "security holder" to assert an action, Section 20(a) does not contain such language. *See, e.g., Davis*, 2005 WL 3527286 at * 4 (agreeing with other courts interpreting the ICA that Congress would have included such language if it intended to create a private right of action under other Sections). Therefore, it is apparent that Congress intentionally omitted an explicit private right of action in Section 20(a).

Third, the absence of "rights creating language" indicates a lack of congressional intent to create private rights of action. *Bellikoff* at 116; *Olmsted* at 435; *Davis*, 2005 WL 3527286; *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1026-27 (C.D. Cal. 2005) (no private right of action exists under ICA for addressing breaches of fiduciary duties that involve personal misconduct); *Jacobs v. Bremner*, 378 F. Supp. 2d 861, 863-66 (N.D. Ill. 2005). More specifically, "statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on

a particular class of persons.'" *Sandoval*, 532 U.S. at 289.  Here Section 20(a) does not contain "rights creating language."  It simply provides that "it shall be unlawful for any person" to solicit a proxy in violation of SEC rules.  The Section's focus on regulated entities or persons, rather than individuals protected, precludes a finding of an implied right of action.

In sum, since *Olmsted*, every court to consider the issue has held that there is no private right of action under any section of the ICA other than the express right of action provided in Section 36(b).  There is no principled basis for reaching a different conclusion as to Section 20(a).  Accordingly, the Section 20(a) claims should be dismissed without leave to amend.

**B.      Under Any Circumstances, the Proxy Statements Did Not Contain Any False or Misleading Statements.**

Once the Court determines that Section 20(a) does not provide a private right of action, it need not delve any further into the sufficiency of Plaintiff's allegations that the 2006 Proxy Statement or 2007 Proxy Statement contained a material misrepresentation or omission.  Under any circumstances, however, the Fund's 2006 and 2007 Proxy Statements contain no material misstatements of omissions.

To prevail on a Section 14(a) claim, a plaintiff must show that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was "an essential link in the accomplishment of the transaction."  *General Electric Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992) (citing *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 385 (1970)).[6]  The court has explained that an omitted fact is material 'if there is a substantial likelihood that a reasonable

---

[6] Because there is no private right of action under Section 20(a), courts have not specifically addressed the pleading requirements for such a claim.  Plaintiff has invoked Section 14(a) of the Securities and Exchange Act of 1934 as the standard to apply.  (Compl. at p. 2, fn. 1.)

shareholder would consider it important in deciding how to vote." *Cathcart*, 980 F.2d at 932 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  Plaintiff cannot satisfy any of these elements.

Plaintiff fails to allege that there was any specific material misstatement or omission in either the 2006 or 2007 Proxy Statement.  Plaintiff only alleges that the proxy statements should have disclosed that the Directors may, in the future, conduct a rights offering.  (*See, e.g.,* Compl. at p. 6, ¶ 12.)  Because the a Rights Offering does not require shareholder approval, however, the Directors were under no legal obligation to disclose any future plans, whether they existed or not.  *Royal Bus. Group, Inc. v. Realist, Inc.*, 933 F.2d 1056, 1063 (1st Cir. 1991) (directors have no duty to disclose matters in a proxy statement which do "not require shareholder approval" and which have "no significant relationship to matters requiring shareholder approval.")

Moreover, there is no nexus between the Proxy Statements in 2006 and 2007 and the Rights Offering that would have required disclosure in the Proxy Statement.  "The need to plead and prove a transaction nexus in a proxy solicitation case is not legitimately in doubt." *Id.* (citing cases); *see also Cathcart*, 980 F.2d at 933. ("[T]he mere fact that the alleged omissions in proxy materials, by permitting directors to win re-election, **indirectly** lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss." (emphasis in original)).  Moreover, the allegations that the proxy statements were part of a future scheme are inadequate. (*See e.g.,* Compl. at pp. 2-3, ¶ 1.)  *See United Canso Oil & Gas Ltd. v. Catawba Corp.*, 566 F. Supp. 232, 237 (D. Conn. 1983) (rejecting notion that purported "scheme" of mismanagement lasting 26 years and requiring directors' elections to implement it, is a "transaction" needing shareholder approval).

IV.    **PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY SLUSA**

Plaintiff's various state-law claims must be dismissed under SLUSA, which preempts state-law class actions involving allegations of securities fraud.   Securities Exchange Act of 1934, § 28(f)(1), as amended, 15 U.S.C.A. § 78bb(f)(1).   In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA") to curtail perceived abuses of the class-action vehicle in litigation involving nationally traded securities.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006).   Congress passed SLUSA to curb abuses of securities fraud litigation whereby plaintiffs sought to avoid the heightened pleading requirements under the PSLRA by bringing cases in state court or asserting state law claims.   In this case, Plaintiff has attempted to avoid the lack of a private right of action and other restrictions under the ICA by asserting a state law claim.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006).  Plaintiff's state law claim must be dismissed, as it is preempted by SLUSA.

SLUSA preemption is triggered when the following conditions are met: an underlying suit (1) is brought as part of a "covered class action"; (2) purports to be based on state law; (3) accuses defendant of a misrepresentation or omission of a material fact (or the use of a manipulative or deceptive device); and (4) alleges that the conduct described in criterion (3) was "in connection with the purchase or sale" of a "covered security."  *See, e.g., Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1343 (11th Cir. 2002).  SLUSA applies broadly to preempt claims brought by purchasers, sellers and holders of securities alleging fraud "in connection with the purchase or sale" of a security.  *Dabit*, 547 U.S. 71.

In determining whether SLUSA applies, the prima facie elements for pleading a particular state law cause of action are irrelevant.  *See Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229 (D.N.J. 2000).   The courts instead look behind "label[s]" to examine whether the "operative

allegations," or the "gravamen[s]," of the complaint hinge on a theory of misrepresentation or omission. *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002); *Dacey v. Morgan Stanley Dean Witter & Co.*, 263 F. Supp. 2d 706, 710 (S.D.N.Y. 2003); *see also Feitelberg v. Merrill Lynch & Co.*, Inc., 234 F. Supp. 2d 1043, 1051 (N.D. Cal. 2002) ("[I]f it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up."); *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 384-85 (E.D.N.Y. 2002) (rejecting artful pleading that put state-law labels on "what are in essence securities fraud claims"). Other Court have held the breach of fiduciary duty claims such as those asserted by Plaintiff to be preempted by SLUSA. *See Prager*, 124 F. Supp. 2d at 230, 235 (breach of fiduciary duty); *In re Salomon Smith Barney Mut. Fund Litig.*, 441 F. Supp. 2d 579, 603-604 (S.D.N.Y. 2006) (same).

The allegations in the Complaint demonstrate that the first and second SLUSA elements are satisfied. *See, In re Alger, Columbia, Janus, MFS, One Group, and Putnam Mut. Fund Litig.*, 320 F. Supp. 2d 352, 354 (D. Md. 2004). Plaintiff cannot dispute that the Complaint asserts a "covered class action" seeking damages "on behalf of more than 50 persons or prospective class members" where common questions of law and fact "predominate over any questions affecting individual members of the Class." (Compl. at pp. 3-4, ¶ 3 (seeking damages) and 12-14, ¶¶ 33-34 (class action).) Nor can they dispute that their claim for breach of fiduciary duty is based on state law. (Compl. at pp. 3-4, ¶ 3.)

Plaintiff also cannot legitimately dispute that the other two factors for SLUSA preemption are satisfied: the state-law cause of action is premised on allegations of "misrepresentation or omission of a material fact (or the use of a manipulative or deceptive device)" and (4) the conduct described in criterion (3) was in connection with the purchase, sale or holding of the mutual fund

shares. *Dabit*, 547 U.S. 71.  Plaintiff specifically annexes his state-law claims to his class action allegations under the ICA.  Those ICA claims, particularly the Section 20(a) claims, rely on allegations of misrepresentations or omissions in connection with the purchase or sale of mutual fund shares. (*See* Compl. pp. 7-8, ¶¶ 14-15.)

In addition, the state law claims expressly incorporates all of the allegations of the amended complaints. (*Id.* at p. 26, ¶ 75.)  Because the elements of a Section 20(a) claim overlap with the third and fourth elements for SLUSA dismissal, this incorporation of all of the allegations of the Complaint, including the Section 20(a) allegations, is tantamount to a concession that SLUSA dismissal applies. *See Prof'l Mgmt. Assocs., Inc. v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) (because allegations of "misrepresentations and omissions are incorporated by reference in the negligence count," the negligence claim is preempted).

Thus, for the reasons set forth above, the state-law claims satisfy all of the elements for SLUSA preemption and, accordingly, must be dismissed.[7]

## V.     THE COURT LACKS PERSONAL JURISDICTION OVER MR. LOONEY

Plaintiff has named Mr. Looney, a resident of Kansas, as a Defendant in the Complaint, yet has failed to allege sufficient jurisdiction over Mr. Looney to satisfy due process to bring him before this Court.  Because Plaintiff cannot meet his burden to demonstrate that this Court has personal

---

[7] The state law claims also mirror the claims alleged under Section 20(a) and 36(b).  As discussed above, Plaintiff cannot allege that any defendant actually breached a duty to the shareholders, where there was no obligation to disclose the Rights Offering because the shareholders would not have voted on the Rights Offering. *See Royal Business Group, Inc. v. Realist, Inc.*, 933 F.2d 1056.  Moreover, Plaintiff has failed to allege with sufficient particularity a specific duty breached by Mr. Looney. *See* Fed.R.Civ. Proc. 9(b).  Finally, as Plaintiff has not, and cannot, allege that Mr. Looney received any fees pursuant to the Rights Offering or otherwise, the state law claim cannot stand against him for excessive fees.

jurisdiction over Mr. Looney, he should be dismissed under Rule 12(b)(2).  *See Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).

Under Colorado's long-arm statute, the Court can exercise jurisdiction over Mr. Looney as long as it does not violate the Due Process Clause of the Fourteenth Amendment.  See C.R.S. § 13-1-124 (a) and (b).  In determining whether the exercise of personal jurisdiction comports with due process, courts consider both general jurisdiction (whether a defendant's "continuous, systematic" contact subjects him or her to jurisdiction in the forum) and specific jurisdiction (whether a defendant's specific acts underlying the case constitute sufficient, minimum contacts with the forum state to subject him/her to jurisdiction in the forum).  *See Doe*, 974 F.2d at 145-46.

Jurisdiction over corporate officers or agents must ordinarily be based on their personal, rather than corporate, contacts with the forum; jurisdiction over such corporate representatives cannot be predicated on jurisdiction over the corporation itself.  *See Wilshire Oil Co. of Tex.  v. Riffe*, 409 F.2d 1277, 1281 & n. 8 (10th Cir. 1969).   Further, an employee or a director of a corporation that is subject to the personal jurisdiction of the courts of the forum will be subject to jurisdiction only if he was a "primary participant" in the activities forming the basis of jurisdiction over the corporation.  *See Calder v. Jones*, 465 US 783, 790 (1984); *see also Fairbrother v. Am. Monument Found., LLC*, 340 F. Supp. 2d 1147, 1160, n. 7 (D. Colo. 2004).   Personal jurisdiction must be based on actions by the defendant which create a "substantial connection" with the forum jurisdiction.  *See Fairbrother v. Am. Monument Found., LLC*, 340 F. Supp. 2d 1147, 1152-53 (D. Colo. 2004), (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987)).

Plaintiff has not satisfied the requirements of either general or specific jurisdiction over Mr. Looney.  Mr. Looney has been a resident of Kansas his entire life, and maintains no other residences, and owns no property in Colorado.  (Looney Decl., ¶¶ 2-4.)  His business is in Kansas,

and he has never worked in Colorado.  (*Id.*, ¶¶ 5-6.)  He has not been to Colorado since 2005, prior to the time of any events giving rise to the allegations in this case.  (Looney Decl., ¶ 6.)  The Fund does not hold board meetings in Colorado.  (*Id.*, ¶ 7.)  Most significantly, Mr. Looney was not in Colorado during any discussions about the 2006 or 2007 Proxy Statements, and the Rights Offering was approved at a Board Meeting in Scottsdale, Arizona.  Furthermore, the Fund is incorporated under the laws of Maryland, and Plaintiff resides in New York.  These facts fail to establish that Mr. Looney has minimum contacts with Colorado sufficient to provide personal jurisdiction over him.  *See SGI Air Holdings II, LLC, v. Novartis Int'l, AG*, 192 F. Supp. 2d. 1195, 1202 (D. Colo. 2002).

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, and for the reasons set forth in the Motions to Dismiss brought by the Advisers and the Fund, Mr. Looney requests that the Court dismiss Claims 1, 2, 4, and 5 of the Complaint.

Dated: June 11, 2007

Respectfully Submitted,

By: : s/ William F. Sullivan
William F. Sullivan
Joshua G. Hamilton
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, 25th Floor
Los Angeles, California  90071-2228
Telephone:    (213) 683-6000
Facsimile:    (213) 627-0705
E-mail:        williamsullivan@paulhastings.com
*Attorneys for Nominal Defendant*
*Boulder Growth & Income Fund, Inc.*


Lawrence W. Treece
Christian H. Hendrickson
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado  80202
Telephone:    (303) 297-2900
Fax:          (303) 298-0940
E-mail:        chendrickson@shermanhoward.com
              ltreece@shermanhoward.com
*Attorneys for Nominal Defendant*
*Boulder Growth & Income Fund, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2007, I electronically filed the foregoing **SPECIALLY APPEARING DEFENDANT JOEL W. LOONEY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE SECTION 12(b)(6) and 12(b)(1)** with the Clerk of Court using the CM/ECF system for filing which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Gerald L. Bader, Jr., Esq.<br>Email:  gbader@bader-associates.com | Lester C. Houtz, Esq.<br>Email:  lester.houtz@hartlit-beck.com |
| Renée B. Taylor, Esq.<br>Email:  rbtaylor@bader-associates.com | Renee Grimmett<br>E-mail  renee.grimmett@bartlit-beck.com |
| ATTORNEYS FOR PLAINTIFF | ATTORNEYS FOR DEFENDANTS<br>BOULDER INVESTMENT ADVISERS,<br>L.L.C. AND STEWART WEST INDIES<br>TRADING COMPANY, LTD., d/b/a<br>STEWART INVESTMENT ADVISERS |

I further certify that on June 11, 2007, a true and correct copy of the foregoing **SPECIALLY APPEARING DEFENDANT JOEL W. LOONEY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE SECTION 12(b)(6) and 12(b)(1)**was transmitted via UPS by delivering such document to an overnight mail service or an authorized courier in a sealed envelopes or packages designated by the express service courier addressed to the persons on whom it is to be served as follows:

> Roy L. Jacobs
> Roy Jacobs & Associates
> 60 East 42nd Street, 46th Floor
> New York, NY  10165
> Telephone:     (212) 867-1156
> Facsimile:      (212) 504-8343
>
> ATTORNEYS FOR PLAINTIFF

s/ Carol A. Nagai
Carol A. Nagai